IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MILDRED W. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV954 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Mildred Bailey, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed her application for Disability Insurance Benefits on April 11, 2006, alleging a disability onset date of February 7, 2006. (Tr. at 10, 112-16.)[2] Plaintiff's

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

application was denied initially (Tr. at 48) and upon reconsideration (Tr. at 49). Thereafter, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 78.) Plaintiff and her non-attorney representative attended a hearing on June 10, 2009, at which a vocational expert testified by phone. (Tr. at 10.) Following this proceeding, the ALJ determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 18) and, on October 21, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since February 7, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: obesity, lumbar disc disease with failed laminectomy syndrome, and an affective disorder (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She is limited to performing no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling. She is unable to work in hazardous settings or in temperature extremes. The claimant is limited to performing routine and repetitive tasks with only occasional public contact.

(Tr. at 12, 13, and 14.)

2

Based on the VE's testimony, the ALJ also found that Plaintiff was unable to return to her past work as a bakery manager. (Tr. at 16.) However, considering Plaintiff's age and education, along with the above findings regarding Plaintiff's work experience and residual functional capacity ("RFC"), the ALJ ultimately determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 17) (citing 20 C.F.R. §§ 404.1569 and 404.1569a). Accordingly, he determined that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date of February 7, 2006 through the date of the decision. (Tr. at 18.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

3

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: obesity, lumbar disc disease with failed laminectomy syndrome, and an affective disorder. (Tr. at 12.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Accordingly, he assessed Plaintiff's RFC and determined that Plaintiff could perform light work that involved no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, that did not require exposure to

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

hazardous settings or temperature extremes, and that involved routine and repetitive tasks with only occasional public contact. (Tr. at 14.) Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could not return to her past relevant work. However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled. (Tr. at 16-17.)

Plaintiff challenges the ALJ's RFC determination on two related grounds. First, she contends that the ALJ "improperly evaluated her credibility and the medical record[,] which resulted in an RFC finding which is not supported by substantial evidence." (Pl.'s Br. [Doc. #11] at 4.) Second, she argues the ALJ failed to properly consider the opinion of her treating physician. Because the medical evidence informs the ALJ's credibility finding, the Court will address Plaintiff's second contention first.

A.   Treating Physician Opinion

Plaintiff contends that the ALJ erred "by ignoring the opinion of [Plaintiff's] treating physician of several years, Dr. Heather Fullerton." (Pl.'s Br. at 7.) Plaintiff appears to be raising a claim that the ALJ failed to properly apply 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), better known as the "treating physician rule."[6] The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be

---

[6] These provisions were previously codified at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

7

obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

8

Moreover, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

In the present case, the ALJ assigned limited weight to Dr. Fullerton's opinion that Plaintiff was unable to work, and provided three reasons for his decision. First, because Dr. Fullerton's opinion was dated just three months after Plaintiff's alleged onset date, the ALJ determined that it did "not suggest any functional limitations which would meet the durational requirements for Social Security disability." (Tr. at 16); see also 20 C.F.R. § 404.1505 (defining disability as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). In addition, the ALJ noted that "Dr. Fullerton's opinion as to disability pertains to an issue reserved to the Commissioner of Social Security." (Id.) Finally, the ALJ's decision describes other evidence in the record that was not consistent with Dr. Fullerton's opinion. (Tr. 15-16.) Nevertheless, despite these findings, the ALJ concluded that Dr. Fullerton's opinion did suggest viable work restrictions, which he included in the RFC assessment. (Id.)

Plaintiff argues that the above explanations were merely pretext to support the ALJ's "result-oriented decision." (Pl.'s Br. at 9.) Plaintiff contends that, although Dr. Fullerton's May 7, 2006 opinion was given shortly after the alleged onset date, her "condition had already lasted

9

for over a year" by that time and, "by Dr. Fullerton's own statement, was expected to last many years into the future." (Id. at 7.) Thus, Plaintiff claims, her condition met the legal definition of disability. However, Plaintiff's brief mischaracterizes Dr. Fullerton's statements. Dr. Fullerton's May 2006 letter recounts Plaintiff's ongoing limitations in walking, standing, carrying, and sitting due to back pain, and concludes that, in light of these limitations, Plaintiff was "unable to work at this time." Dr. Fullerton then added that Plaintiff's "prognosis is fair and I do not expect her to make any rapid improvement." (Tr. at 275.) At no point did Dr. Fullerton opine as to the duration of Plaintiff's impairment, let alone posit that her condition would remain disabling for "many years."

Moreover, treatment records from both before and after Plaintiff's alleged onset date of February 7, 2006 provide little contemporaneous evidence of total disability during the period in question. A functional capacity evaluation performed in September 2005 at Dr. Fullerton's request found that, despite Plaintiff's obvious restrictions in ambulation due to her use of a walker, she remained "unrestricted in sitting and upper extremity tasks completed in sitting" and had "[a]bove average hand coordination." (Tr. at 199-200.) The examiner noted that these findings "should be the most important . . . in regards to future job placement." (Tr. at 200.)

In addition, the state agency medical consultant who performed Plaintiff's physical RFC assessment in June 2006 noted even greater improvement in Plaintiff's condition since that September 2005 evaluation. (Tr. at 272.) The consultant ultimately concluded that Plaintiff could perform medium work (Tr. at 273), and a second medical consultant affirmed this

10

conclusion in September 2006 after reviewing more recent medical records (Tr. at 369).

In considering the evidence, the ALJ also noted that more recent medical records from the time period in question indicated that Plaintiff's gait, stance, and musculoskeletal findings were all normal upon exam (Tr. at 15, 437, 447), although Plaintiff's activities continued to be self-limited due to pain allegations (see Tr. at 272, 374-84). In fact, from a review of Dr. Fullerton's treatment notes, her opinion appears to be largely, if not entirely, based on Plaintiff's self-reports of severe, disabling pain, rather than any clinical findings. While this is hardly surprising, given that Dr. Fullerton's role in Plaintiff's care was to facilitate Plaintiff's pain management, the lack of clinical support for Dr. Fullerton's opinion, along with the conflicting medical evidence outlined above, supports the ALJ's decision to assign little weight to Dr. Fullerton's opinion.

Finally, to the extent that Dr. Fullerton opined that Plaintiff was "unable to work," the ALJ properly concluded that this opinion pertained to an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-5p. The ALJ nevertheless took Dr. Fullerton's opinion into account in formulating work restrictions, along with the findings of the state agency physicians and the medical evidence in the record, and concluded that, on balance, an RFC for light work was appropriate. (Tr. at 16.) Substantial evidence supports the ALJ's decision in this regard.[7]

---

[7] The Court also notes that, after identifying jobs available in significant numbers in the national economy for an individual capable of the light work (with further restrictions) as set out in the RFC, the vocational expert went on to identify jobs available in significant numbers for an individual capable of only sedentary work, but with Plaintiff's additional limitations. (Tr. at 17-18.) Thus, any potential error in finding Plaintiff capable of light, rather than sedentary, work was rendered harmless at step five of the sequential analysis.

B.  Credibility

In a related argument, Plaintiff challenges the ALJ's credibility determination. Specifically, she contends that the ALJ "improperly evaluated her credibility and the medical record[,] which resulted in an RFC finding which is not supported by substantial evidence." (Pl.'s Br. at 4.)  She further alleges that the ALJ "cherry pick[ed] from the record, ignore[d] the majority of the medical evidence[,] and cite[d] reasons which are legally irrelevant and impermissible to use in a disability determination." (Id.)  To the extent that Plaintiff's challenge relies on the opinion of Dr. Fullerton, it fails for the reasons set out in the previous subsection. The Court considers Plaintiff's additional contentions below.

As Plaintiff correctly asserts, an ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record."  SSR 96-7p; see also 20 C.F.R. § 404.1529.  Toward this end, the Fourth Circuit in Craig provided a two-part test for evaluating a claimant's statements about symptoms.  "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. at 594 (citing 20 C.F.R. § 404.1529(b)).  If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work."  Craig, 76 F.3d at 596.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, Plaintiff alleged severe back pain and mood problems as a result of her documented lumbar disc disease, obesity, and affective disorder, and the ALJ determined at step one of the Craig analysis that these conditions "could reasonably be expected to produce [her] alleged symptoms." (Tr. at 15.) However, the ALJ found at step two that substantial evidence failed to support the intensity and persistence of the pain and mood issues alleged by Plaintiff or the extent to which these impairments limited her ability to work. Therefore, the ALJ ultimately concluded that Plaintiff's impairments, although severe, were not disabling.

Plaintiff now challenges the ALJ's findings at the second step of the Craig analysis, arguing that he erred in faulting Plaintiff for failing to lose weight and for visiting her mother in Florida when her father died. She also claims that the ALJ focused on medical evidence indicating that she felt better, had a normal gait, and intended to start an e-Bay business, while ignoring contrary records indicating that she felt much worse, had a weak gait, and was unable to follow through with her business plans due to pain and depression. Finally, Plaintiff contends

14

that the ALJ ignored evidence of side effects from her medications, erroneously cited her GAF[8] score as 55-60 rather than 50-55 in one instance, and "ignored all other GAF's [sic] which were rated below 60 in his finding that she only suffered from moderate psychological symptoms." (Pl.'s Br. at 4-6.)

Plaintiff's contentions fail to undermine the ALJ's credibility finding in any significant way. First, the ALJ did not fault Plaintiff for failing to lose weight, but simply noted that she was "noncompliant with [her] doctor's advice regarding diet and exercise." (Tr. at 15.) The ALJ did not deny Plaintiff's claim on the basis that she failed to follow this advice. Instead, the ALJ simply noted that Plaintiff's physical and mental conditions were steadily improving during the time she was reportedly exercising and eating better. (See Tr. at 15, 382, 385, 390.)

The record also contains numerous inconsistencies regarding the effectiveness of other treatments. At times, for example, Plaintiff reported that her medications, hot baths, and the use of a recliner were helping her pain (See, e.g., Tr. at 34-35, 228, 290, 292, 294, 296, 297, 374), while at other times, she reported that "everything" made her pain worse, and "nothing" helped (Tr. at 288, 376). Similarly, although she sometimes reported drowsiness, swelling, and constipation from her medications (Tr. at 15, 29, 35), Plaintiff at other times reported no side effects whatsoever (see, e.g., Tr. at 294). In fact, Plaintiff's own brief highlights further inconsistencies in the record which ultimately bolster the ALJ's determination, including those related to her gait, her need for a cane or walker, and her ability to travel to Florida to assist her

---

[8] Global Assessment of Functioning, or GAF, "is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" Boyd v. Apfel, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders [DSM-IV] at 32 (4th ed. 1994)).

mother. Although the medical records indicate that Plaintiff displayed a weak gait for a portion of 2006 (Tr. 283, 287, 291, 295), other records, particularly those from later dates, indicate a normal gait (Tr. at 437, 447), and only Dr. Fullerton notes Plaintiff's need for a cane after early 2006. Also, as Defendant correctly asserts, "[t]he ALJ did not 'fault' Plaintiff for going to assist her mother after the death of her father, but only noted that she was able to do so" (Def.'s Br. at 9), contrary to Plaintiff's assertions that she was capable of doing little at that time other than sitting in a recliner (Tr. at 15, 34-35).

Plaintiff's allegations regarding her GAF are similarly unavailing. A GAF score of 51-60 indicates moderate symptoms. DSM-IV at 34. Thus, Plaintiff's GAF scores ranging from 50 to 60 throughout her medical records clearly support a finding of moderate psychological symptoms, even given Plaintiff's lower-end scores of 50-55 on two occasions. (Tr. at 15, 470-73, 475-479, 481, 483-86.) Overall, the record in this case fails to provide any evidence, other than Plaintiff's own subjective complaints, that Plaintiff's impairment rendered her unable to perform simple, unskilled, light and sedentary jobs with little social interaction during the period in question, and the ALJ's determination regarding Plaintiff's credibility is reasonable and supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 27th day of January, 2015.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge